1

2

3

4

5

6

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

7  CARL WAYNE NUNLEY,

8                    Plaintiff,

9       v.

10 CAROLYN W. COLVIN,

11                    Defendant.

NO:  15-CV-00270-FVS

REPORT AND RECOMMENDATION
TO GRANT PLAINTIFF'S MOTION
FOR SUMMARY JUDGMENT AND
TO DENY DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT

ECF Nos. 12, 17

12

13

14

15

16

17

18

19

20

BEFORE THE COURT are the parties' cross motions for summary

judgment.  ECF Nos. 12, 17.  This matter has been referred to the undersigned

magistrate judge for issuance of a report and recommendation.  ECF No. 16.  The

Court, having reviewed the administrative record and the parties' briefing, is fully

informed.  For the reasons discussed below, IT IS RECOMMENDED Plaintiff's

Motion (ECF No. 12) be granted and Defendant's Motion (ECF No. 17) be denied.

1

**JURISDICTION**

2      The Court has jurisdiction over this case pursuant to 42 U.S.C. §§ 405(g);

3  1383(c)(3).

4

**STANDARD OF REVIEW**

5      A district court's review of a final decision of the Commissioner of Social

6  Security is governed by 42 U.S.C. § 405(g).  The scope of review under § 405(g) is

7  limited; the Commissioner's decision will be disturbed "only if it is not supported

8  by substantial evidence or is based on legal error."  *Hill v. Astrue*, 698 F.3d 1153,

9  1158 (9th Cir. 2012).  "Substantial evidence" means "relevant evidence that a

10  reasonable mind might accept as adequate to support a conclusion."  *Id.* at 1159

11  (quotation and citation omitted).  Stated differently, substantial evidence equates to

12  "more than a mere scintilla[,] but less than a preponderance."  *Id.* (quotation and

13  citation omitted).  In determining whether the standard has been satisfied, a

14  reviewing court must consider the entire record as a whole rather than searching

15  for supporting evidence in isolation.  *Id.*

16      In reviewing a denial of benefits, a district court may not substitute its

17  judgment for that of the Commissioner.  If the evidence in the record "is

18  susceptible to more than one rational interpretation, [the court] must uphold the

19  ALJ's findings if they are supported by inferences reasonably drawn from the

20  record."  *Molina v. Astrue,* 674 F.3d 1104, 1111 (9th Cir. 2012).  Further, a district

court "may not reverse an ALJ's decision on account of an error that is harmless." *Id*. An error is harmless "where it is inconsequential to the [ALJ's] ultimate nondisability determination." *Id*. at 1115 (quotation and citation omitted). The party appealing the ALJ's decision generally bears the burden of establishing that it was harmed. *Shineski v. Sanders*, 556 U.S. 396, 409-410 (2009).

### FIVE-STEP EVALUATION PROCESS

A claimant must satisfy two conditions to be considered "disabled" within the meaning of the Social Security Act. First, the claimant must be "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A); 1382c(a)(3)(A). Second, the claimant's impairment must be "of such severity that he is not only unable to do his previous work[,] but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A); 1382c(a)(3)(B).

The Commissioner has established a five-step sequential analysis to determine whether a claimant satisfies the above criteria. *See* 20 C.F.R. §§ 404.1520(a)(4)(i)-(v); 416.920(a)(4)(i)-(v). At step one, the Commissioner considers the claimant's work activity. 20 C.F.R. §§ 404.1520(a)(4)(i);

416.920(a)(4)(i).  If the claimant is engaged in "substantial gainful activity," the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(b); 416.920(b).

If the claimant is not engaged in substantial gainful activity, the analysis proceeds to step two.  At this step, the Commissioner considers the severity of the claimant's impairment.  20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii).  If the claimant suffers from "any impairment or combination of impairments which significantly limits [his or her] physical or mental ability to do basic work activities," the analysis proceeds to step three.  20 C.F.R. §§ 404.1520(c); 416.920(c).  If the claimant's impairment does not satisfy this severity threshold, however, the Commissioner must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(c); 416.920(c).

At step three, the Commissioner compares the claimant's impairment to severe impairments recognized by the Commissioner to be so severe as to preclude a person from engaging in substantial gainful activity.  20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii).  If the impairment is as severe or more severe than one of the enumerated impairments, the Commissioner must find the claimant disabled and award benefits.  20 C.F.R. §§ 404.1520(d); 416.920(d).

If the severity of the claimant's impairment does not meet or exceed the severity of the enumerated impairments, the Commissioner must pause to assess

1   the claimant's "residual functional capacity."  Residual functional capacity (RFC),

2   defined generally as the claimant's ability to perform physical and mental work

3   activities on a sustained basis despite his or her limitations, 20 C.F.R. §§

4   404.1545(a)(1); 416.945(a)(1), is relevant to both the fourth and fifth steps of the

5   analysis.

6       At step four, the Commissioner considers whether, in view of the claimant's

7   RFC, the claimant is capable of performing work that he or she has performed in

8   the past (past relevant work).  20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv).

9   If the claimant is capable of performing past relevant work, the Commissioner

10  must find that the claimant is not disabled.  20 C.F.R. §§ 404.1520(f); 416.920(f).

11  If the claimant is incapable of performing such work, the analysis proceeds to step

12  five.

13      At step five, the Commissioner considers whether, in view of the claimant's

14  RFC, the claimant is capable of performing other work in the national economy.

15  20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v).  In making this determination,

16  the Commissioner must also consider vocational factors such as the claimant's age,

17  education and past work experience.  20 C.F.R. §§ 404.1520(a)(4)(v);

18  416.920(a)(4)(v).  If the claimant is capable of adjusting to other work, the

19  Commissioner must find that the claimant is not disabled.  20 C.F.R. §§

20  404.1520(g)(1); 416.920(g)(1).  If the claimant is not capable of adjusting to other

1    work, analysis concludes with a finding that the claimant is disabled and is

2    therefore entitled to benefits.  20 C.F.R. §§ 404.1520(g)(1); 416.920(g)(1).

3      The claimant bears the burden of proof at steps one through four above.

4    *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999).  If the analysis proceeds to

5    step five, the burden shifts to the Commissioner to establish that (1) the claimant is

6    capable of performing other work; and (2) such work "exists in significant

7    numbers in the national economy."  20 C.F.R. §§ 404.1560(c)(2); 416.920(c)(2);

8    *Beltran v. Astrue*, 700 F.3d 386, 389 (9th Cir. 2012).

9             **ALJ'S FINDINGS**

10      Plaintiff applied for supplemental security income and disability insurance

11    benefits on August 11, 2010, alleging an onset date of March 1, 2005.  Tr. 359-64.

12    Benefits were denied initially, Tr. 202-06, and upon reconsideration.  Tr. 207-11.

13    Plaintiff appeared for a hearing before an administrative law judge ("ALJ") on

14    January 24, 2012.  Tr. 37-59.  At the hearing, the alleged onset date was amended

15    to August 11, 2010.  Tr. 40.  On February 7, 2012, the ALJ found Plaintiff had

16    been under a disability since the alleged amended onset date of disability.  Tr. 184-

17    93.  On September 18, 2012, the Appeals Council vacated the hearing decision and

18    remanded the case for further proceedings.  Tr. 194-201.  On October 15, 2013,

19    and May 30, 2014, the ALJ held additional hearings.  Tr. 60-139.  At the May 2014

20    hearing, the alleged onset date was noted to have been amended to June 1, 2009.

Tr. 101.  The ALJ denied benefits, Tr. 17-36, and the Appeals Council denied review, Tr. 1.

At step one, the ALJ found Plaintiff has not engaged in substantial gainful activity since June 1, 2009, the amended alleged onset date.  Tr. 22.  At step two, the ALJ found Plaintiff has the following severe impairments: cervical degenerative disease status post C6-7 laminectomy and discectomy in 2005 and right shoulder calcific tendonitis with mild degenerative joint disease.  Tr. 23.  At step three, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.  Tr. 25.  The ALJ then concluded that Plaintiff has the RFC

> to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except he can only occasionally climb stairs or ramps, balance, stoop, kneel, crouch, or crawl, and never climb ropes, ladders, or scaffolds or be exposed to unprotected heights.  He should also avoid concentrated exposure to hazards, and he should do no more than occasional overhead reaching and frequent reaching bilaterally.

Tr. 26.  At step four, the ALJ found Plaintiff is unable to perform any past relevant work.  Tr. 29.  At step five, the ALJ found that considering the claimant's age, education, work experience, and RFC, there are other jobs that exist in significant numbers in the national economy that Plaintiff can perform.  Tr. 30.  The ALJ concluded Plaintiff has not been under a disability, as defined in the Social Security Act, from June 1, 2009, through the date of the decision.  Tr. 31.

On September 11, 2015, the Appeals Counsel denied review, Tr. 1-7, making the ALJ's decision the Commissioner's final decision for purposes of judicial review. *See* 42 U.S.C. § 1383(c)(3); 20 C.F.R. §§ 416.1481, 422.210.

## ISSUES

Plaintiff seeks judicial review of the Commissioner's final decision denying him disability insurance benefits under Title II and supplemental security income benefits under Title XVI of the Social Security Act. ECF No. 12. Plaintiff raises the following issues for this Court's review:

1. Whether the ALJ properly rejected Plaintiff's subjective complaints;

2. Whether the ALJ properly weighed the medical opinion evidence;

3. Whether the ALJ erred in considering Plaintiff's mental limitations at step two; and

4. Whether the ALJ conducted a proper step five assessment.

ECF No. 12 at 8-20.

**DISCUSSION**

**A. Adverse Credibility Finding**

Plaintiff argues the ALJ improperly rejected Plaintiff's subjective complaints.[1]  ECF No. 12 at 15-19.

An ALJ engages in a two-step analysis to determine whether a claimant's testimony regarding subjective pain or symptoms is credible.  "First, the ALJ must determine whether there is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged."  *Molina*, 674 F.3d at 1112 (internal quotation marks omitted).  "The claimant is not required to show that [his] impairment could reasonably be expected to cause the severity of the symptom [he] has alleged; [he] need only show that it could reasonably have caused some degree of the symptom."  *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

---

[1] The heading for this section in Plaintiff's briefing states that "the ALJ improperly rejected [Plaintiff's] subjective complaints and lay witness statements."  ECF No. 12 at 15.  However, as noted by Defendant, Plaintiff does not specifically raise the issue of lay witness statements in his briefing.  ECF No. 17 at 18.  Thus, the Court declines to address the issue.  *See Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (court may decline to consider reasons not raised with specificity in Plaintiff's opening brief).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*. (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *Thomas v. Barnhart*, 278 F.3d 947, 958 (9th Cir. 2002) ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony."). "The clear and convincing [evidence] standard is the most demanding required in Social Security cases." *Garrison v. Colvin*, 759 F.3d 995, 1015 (9th Cir. 2014) (quoting *Moore v. Comm'r of Soc. Sec. Admin*., 278 F.3d 920, 924 (9th Cir. 2002)).

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

1        Here, the ALJ found Plaintiff's statements "concerning the intensity,

2   persistence and limiting effects of these symptoms are not entirely credible" for

3   several reasons.  Tr. 27.  As an initial matter, the ALJ found Plaintiff was not

4   entirely credible because (1) "Plaintiff's subjective allegations … are not fully

5   corroborated by his contemporaneous statements to medical providers documented

6   in chart notes or by information contained in the record pertaining to his activities

7   of daily living;" and (2) no doctor prescribed Plaintiff pain medication, which

8   "suggests that the degree of pain experienced does not warrant any such

9   intervention, and would not interfere with the claimant's ability to perform basic

10  work activity."  Tr. 27-28.  However, the Court declines to consider these reasons

11  because Plaintiff failed to raise them with specificity in his opening brief.  *See*

12  *Carmickle v. Comm'r of Soc. Sec. Admin.*, 533 F.3d 1155, 1161 n.2 (9th Cir.

13  2008).  Moreover, "[e]ven where [Plaintiff's daily] activities suggest some

14  difficulty functioning, they may be grounds for discrediting the claimant's

15  testimony to the extent that they contradict claims of a totally debilitating

16  impairment."  *Molina*, 674 F.3d at 1113.  And "[e]vidence of 'conservative

17  treatment' is sufficient to discount a claimant's testimony regarding severity of an

18  impairment."  *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007).

19

20

Plaintiff's opening brief only challenged the ALJ's finding that "the objective medical evidence does not support the level of impairment claimed."[2] Tr. 27.  An ALJ may not discredit a claimant's pain testimony and deny benefits solely because the degree of pain alleged is not supported by objective medical evidence.  *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989).  However, the medical evidence is a relevant factor in determining the severity of a claimant's pain and its disabling effects.  *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2).  Here, the ALJ discussed medical evidence contradicting Plaintiff's claims of disabling physical impairments.  Tr. 27.  For example, the ALJ noted that in May 2011, Plaintiff "had good physical exam findings," which did include marked restrictions in neck extension and mild restriction in rotation and flexion; but also noted "essentially normal" range of

---

[2] Plaintiff contends "[i]t is important to note that the ALJ first issued a fully favorable decision and found that [Plaintiff] was credible.... It is unclear why the ALJ found that [Plaintiff] was no longer credible after the remand from the appeals council."  ECF No. 12 at 16.  However, as noted by Defendant, the previous ALJ decision cited by Plaintiff was vacated by the Appeals Council.  ECF No. 17 at 17 (citing Tr. 194-201).  The Court's jurisdiction is limited to reviewing the Commissioner's final decision.  *See* 42 U.S.C. § 405(g).

motion in arms, and strength deficit only in internal rotation of the left arm.  Tr.

768.  In January 2013, Plaintiff had "no significant musculoskeletal or neurological

abnormalities on physical exam." [3]  Tr. 27 (citing Tr. 648-49).  In June 2013,

Plaintiff complained of right arm pain and numbness, but "his right upper

extremity exam was not significantly abnormal."  Tr. 27 (citing Tr. 827-28).  In

July 2013, an EMG of Plaintiff's right upper extremity was "suggestive" of mild

C7 radiculopathic process; and the nerve conduction study of his upper extremities

was normal.  Tr. 837, 839.  In January 2014, the ALJ noted Plaintiff's neurological

examination showed no "significant abnormality," however, the Court notes the

same treatment record acknowledges that the numbness in Plaintiff's right thumb

"would correspond" to objective test results indicating a C6 radiculopathy and the

foraminal stenosis noted at the C5-6 level.[4]  Tr. 27 (citing Tr. 847-48).  Finally, in

[3] The ALJ's also stated that during this same visit "surgery was not

recommended."  Tr. 27 (citing Tr. 794).  However, the Court notes this statement is

not explicitly reflected in the treatment note cited by the ALJ.

[4] The ALJ found Plaintiff "acknowledged that he did not feel bad enough to

consider surgery" during this visit.  Tr. 27.  However, a review of the record does

not corroborate his finding; rather, "the role for surgery" was discussed, and

Plaintiff indicated "at this time he would like to at least attempt a few other

nonoperative measures."  Tr. 848.

March 2014, "no significant abnormalities were noted" upon physical examination. Tr. 857-58.

These inconsistencies between Plaintiff's alleged "complete inability to work" (Tr. 27), and the medical evidence, provided a permissible reason for discounting Plaintiff's credibility. *See Thomas*, 278 F.3d at 958-59 ("If the ALJ finds that the claimant's testimony as to the severity of [his] pain and impairments is unreliable, the ALJ must make a credibility determination … [t]he ALJ may consider testimony from physicians and third parties concerning the nature, severity and effect of the symptoms of which the claimant complains."); *see also Rollins*, 261 F.3d at 857 ("While subjective pain testimony cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor in determining the severity of the claimant's pain and its disabling effects."). Plaintiff argues his testimony is consistent with the medical record, and cites evidence that could be considered more favorable to the Plaintiff. ECF No. 12 at 16-19. However, "where evidence is susceptible to more than one rational interpretation, it is the [Commissioner's] conclusion that must be upheld." *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *see also Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995) ("[t]he ALJ is responsible for determining credibility"). Regardless, in light of the necessity to remand for reconsideration of Dr. Ward's opinion as discussed below,

and the considerable amount of amount of evidence gathered after the ALJ's

decision (Tr. 890-944, 964-84), the ALJ should reconsider the credibility finding

on remand.

**B. Medical Opinion Evidence**

In addition, Plaintiff contends the ALJ improperly rejected the medical

opinion of treating physician, Peter Ward, M.D.  ECF No. 12 at 12-15.

There are three types of physicians: "(1) those who treat the claimant

(treating physicians); (2) those who examine but do not treat the claimant

(examining physicians); and (3) those who neither examine nor treat the claimant

[but who review the claimant's file] (nonexamining [or reviewing] physicians)."

*Holohan v. Massanari,* 246 F.3d 1195, 1201–02 (9th Cir. 2001) (citations omitted).

Generally, a treating physician's opinion carries more weight than an examining

physician's, and an examining physician's opinion carries more weight than a

reviewing physician's.  *Id.* at 1202.  "In addition, the regulations give more weight

to opinions that are explained than to those that are not, and to the opinions of

specialists concerning matters relating to their specialty over that of

nonspecialists."  *Id.* (citations omitted).

If a treating or examining physician's opinion is uncontradicted, the ALJ

may reject it only by offering "clear and convincing reasons that are supported by

substantial evidence."  *Bayliss v. Barnhart,* 427 F.3d 1211, 1216 (9th Cir. 2005).

"However, the ALJ need not accept the opinion of any physician, including a treating physician, if that opinion is brief, conclusory and inadequately supported by clinical findings." *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (internal quotation marks and brackets omitted).  "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." *Bayliss*, 427 F.3d at 1216 (citing *Lester v. Chater,* 81 F.3d 821, 830–831 (9th Cir. 1995)).

In May 2014, treating provider Dr. Peter Ward completed a physical medical source statement.  Tr. 876-79.  Dr. Ward opined that Plaintiff could sit for 15-30 minutes at a time; stand for 15 minutes at a time; walk for 15-30 minutes at a time; sit for 3-4 hours in an eight hour day; stand for 2-3 hours in an eight hour day; and walk for 2-3 hours in an eight hour day.  Tr. 876.  Dr. Ward further opined that Plaintiff could seldom lift 5-10 pounds and seldom carry 10-20 pounds.  Notably, Dr. Ward also opined that Plaintiff would need more than the scheduled breaks of 10 minutes or more throughout the day; was likely to miss work or leave early at least 2-3 days per month due to flare ups of symptoms; and was not likely to tolerate production level sorting, assembly, or inspection.  Tr. 878.  The ALJ assigned partial weight to Dr. Ward's opinion.  Tr. 28.  Because Dr. Ward's opinion was contradicted by Dr. Norman Staley, Tr. 172-80, the ALJ was required

to give specific and legitimate reasons supported by substantial evidence for giving Dr. Ward's opinion partial weight.

First, the ALJ gave Dr. Ward's opinion only partial weight "as it was clearly obtained by [Plaintiff's] counsel for the purpose of supporting disability for [Plaintiff's] supplemental hearing." Tr. 28. In general, the purpose for which medical reports are obtained does not provide a legitimate basis for rejecting them. *See Lester*, 81 F.3d at 832. As noted by Defendant, the Ninth Circuit has held that, in certain circumstances, an ALJ is permitted to question the credibility of a doctor's report when it is solicited by counsel. ECF No. 17 at 12 (citing *Saelee v. Chater*, 94 F.3d 520, 522-23 (9th Cir. 1996)). However, "in the absence of other evidence to undermine the credibility of a medical report, the purpose for which the report was obtained does not provide a legitimate basis for rejecting it." *Reddick v. Chater*, 157 F.3d 715, 726 (9th Cir. 1998). Defendant offers "context[ual]" evidence that allegedly "gave the ALJ reason to question [Dr. Ward's] opinion; however, the Court is not permitted to consider reasoning that was not offered by the ALJ in the decision. ECF No. 17 at 13; *Bray*, 554 F.3d at 1226 (the Court "review[s] the ALJ's decision based on the reasoning and factual findings offered by the ALJ – not *post hoc* rationalizations that attempt to intuit what the adjudicator may have been thinking."). Here, the ALJ does not offer any "other evidence" that would undermine the credibility of Dr. Ward's opinion.

Therefore, the purpose for which the report was obtained is not a legitimate basis for rejecting Dr. Ward's opinion.

Second, the ALJ noted that

the possibility always exists that a doctor may express an opinion in an effort to assist a patient with whom he or she sympathizes for one reason or another.  Another reality which should be mentioned is that patients can be quite insistent and demanding in seeking supportive notes or reports from their physicians, who might provide such a note in order to satisfy their patients [sic] requests and avoid unnecessary doctor/patient tension.

Tr. 28.  As an initial matter, the Court is unclear as to whether this statement is actually offered by the ALJ as a reason to reject Dr. Ward's opinion.  Regardless, when explaining her reasons for rejecting medical opinion evidence, the ALJ must do more than state a conclusion, rather, the ALJ must "set forth [her] own interpretations and explain why they, rather than the doctors', are correct." *Reddick*, 157 F.3d at 725.  Moreover, "[t]his skepticism of a treating physician's credibility flies in the face of clear circuit precedent." *Id*. at 726.  An ALJ may not assume doctors routinely lie in order to help their patients collect disability benefits. *Lester*, 81 F.3d at 833.  Here, any speculation by the ALJ as to Dr. Ward's motives was inappropriate and without basis in the record.  This was not a specific, legitimate reason to reject his opinion.

Third, the ALJ found "Dr. Ward's opinion that [Plaintiff] needed to frequently shift positions is without substantial support from the other evidence of record." Tr. 28.  The consistency of a medical opinion with the record as a whole

is a relevant factor in evaluating that medical opinion.  *Orn v. Astrue*, 495 F.3d

625, 631 (9th Cir. 2007).  However, in this case, the ALJ merely states this

conclusion without properly setting forth any explanation or support from the

record for this finding.  *See Reddick*, 157 F.3d at 725.  Moreover, even assuming,

*arguendo*, that Dr. Ward's assessment regarding Plaintiff's need to frequently shift

positions was without support in the record; the ALJ fails to consider whether the

significant additional limitations included in Dr. Ward's opinion were supported by

the record.  Thus, this was not a legitimate and specific reason to reject all of Dr.

Ward's assessed limitations.

Finally, while not discussed by either party, the ALJ found the limitations

assessed by Dr. Ward "are not really inconsistent with the residual functional

capacity in this opinion.  [Dr. Ward] essentially found [Plaintiff] had the ability to

perform a reduced level of light work, and he did not endorse 'disability' or

functional limitations that would preclude work."  Tr. 28.  However, this statement

does not properly account for all of the limitations specifically opined by Dr.

Ward, and not rejected by the ALJ, including: seldom lifting up to 10 pounds and

never lifting more than 10 pounds; seldom bending over a sink, twisting his neck,

maintaining flexed neck position and forward bent position, working with hands

outstretched, and grasping/handling; likely needing more than the scheduled breaks

of 10 minutes or more throughout the day; not likely to tolerate production level

sorting, assembly, or inspection; and likely missing work or leaving early at least 2-3 days per month due to flare-ups of symptoms. Tr. 876-78. The vocational expert (VE) testified these limitations would preclude all types of employment. Tr. 135-38. Thus, the ALJ's error in rejecting Dr. Ward's opinion was not harmless because it is not "inconsequential to the [ALJ's] ultimate nondisability determination." *Molina*, 674 F.3d at 1115. The ALJ must reconsider Dr. Ward's opinion, and all of the medical opinion evidence, upon remand.

**C. Step Two**

Plaintiff contends the ALJ erred by failing to find his "mental impairments" were severe impairments at step two. ECF No. 12 at 10-12.

To be considered "severe" at step two of the sequential analysis, an impairment must significantly limit an individual's ability to perform basic work activities. 20 C.F.R. §§ 404.1520(c), 416.920(c); *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment that is "not severe" must be a slight abnormality (or a combination of slight abnormalities) that has no more than a minimal effect on the ability to do basic work activities. SSR 96-3P, 1996 WL 374181 at *1 (July 2, 1996). Basic work activities include, *inter alia*, understanding, carrying out, and remembering simple instructions; use of judgment; responding appropriately to supervision, co-workers and usual work

situations; and dealing with changes in a routine work setting.  20 C.F.R. § 404.1521(b).

Plaintiff bears the burden to establish the existence of a severe impairment or combination of impairments, which prevent him from performing substantial gainful activity, and that the impairment or combination of impairments lasted for at least twelve continuous months.  20 C.F.R. §§ 404.1505, 404.1512(a); *Edlund v. Massanari*, 253 F.3d 1152, 1159-60 (9th Cir. 2011).  However, step two is "a de minimus screening device [used] to dispose of groundless claims."  *Smolen*, 80 F.3d at 1290.  "Thus, applying our normal standard of review to the requirements of step two, we must determine whether the ALJ had substantial evidence to find that the medical evidence clearly established that [Plaintiff] did not have a medically severe impairment or combination of impairments."  *Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005).

Here, at step two, the ALJ found that Plaintiff's "medically determinable mental impairments of depression and adjustment disorder, considered singly and in combination, do not cause more than minimal limitation in [Plaintiff's] ability to perform basic mental work activities and are therefore nonsevere."  Tr. 24.  In support of this finding, the ALJ cites evidence that Plaintiff's mood was "affected by situational stressors like housing stress, his son's mental illness, his finances, and his Social Security Appeal, but his mental assessments were normal, and he

stated he did not feel like he needed mental medication." Tr. 24 (citing Tr. 628, 723, 764, 773). The ALJ also cites a treatment note that lists a diagnosis of major depression in May 2011, but notes Plaintiff had a normal mental status exam at that visit. Tr. 773-75. The Court notes that Plaintiff appeared "less depressed" at that visit and the medical provider was "not convinced that any med[ication] other than pain meds will change his attitude or alleviate his depression." Tr. 773, 775. In addition, the ALJ relied on evidence that Plaintiff stopped using one medication despite reporting an improvement in mood, good spirits, and an enjoyment of his neighbors. Tr. 24 (citing Tr. 660, 672, 759-61). In November 2011, Plaintiff denied depression "other than from pain in his neck and back." Tr. 759.

Plaintiff contends that it was improper for the ALJ to reject Plaintiff's mental complaints "despite evidence that these impairments cause significant functional limitations." ECF No. 12 at 11. In support of this argument Plaintiff relies on a note from 2008, before the relevant adjudicatory period, assessing depression and ADD; one diagnosis of personality disorder, NOS in 2010; a 2011 treatment note assessing a GAF score of 52 in 2011, and describing Plaintiff's mood as "pessimistic, depressed, hopeless, helpless, dysphoric;" a 2011 treatment note indicating a depressed an anxious mood, and specifically noting Plaintiff was "very depressed about his chronic pain;" a review of previous medical records in 2014 indicating "a new diagnosis of bipolar, long standing depression, anxiety,

PTSD;" and a treatment note in 2015 that Plaintiff was nervous/anxious and had a

dysphoric mood.  ECF No. 12 at 11 (citing Tr. 541-43, 555, 575-76, 583-84, 896,

943).  However, the cited records do not indicate that these symptoms limited

Plaintiff's work capacity in any manner; nor does Plaintiff indicate how his alleged

mental health impairments, specifically, resulted in limitations beyond those

included in the assessed RFC.  As the record stands, the ALJ relied on substantial

evidence to find Plaintiff's mental impairments were not severe at step two.  *See*

*Burch*, 400 F.3d at 679 (ALJ's finding upheld when evidence is susceptible to

more than one rational interpretation).  However, as discussed in detail above, the

ALJ erred in considering the medical opinion evidence.  Thus, on remand, it may

be necessary for the ALJ to reconsider whether Plaintiff's alleged mental

impairments were severe at step two of the sequential analysis.[5]

---

[5] Plaintiff briefly contends that "[a]t the very least, the ALJ was required to further

develop the record on the issue of mental impairments and the extent of limitations

imposed by these impairments."  ECF No. 12 at 12.  The ALJ does have a special

duty to develop the record fully and fairly to ensure that the claimant's interests are

considered, even when the claimant is represented by counsel.  *Tonapetyan v.*

*Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  However, "[a]n ALJ's duty to

develop the record is triggered only when there is ambiguous evidence or when the

record is inadequate to allow for proper evaluation of the evidence."  *Mayes v.*

**D. Step Five**

Plaintiff argues that the ALJ's step five findings were improper because the assessed RFC, and the resulting hypothetical posed to the VE, failed to account for Plaintiff's limitations, as opined by Dr. Ward.  ECF No. 12 at 20.  As discussed above, the ALJ erred by improperly rejecting Dr. Ward's opinion, and should reconsider the medical opinion evidence on remand.  Thus, on remand, the ALJ should reassess the RFC and, if necessary, reconsider the remaining steps in the sequential analysis.

## CONCLUSION

The ALJ's decision was not supported by substantial evidence and free of legal error.  Remand is appropriate when, like here, a decision does not adequately

*Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001).  Moreover, while the ALJ may have a duty to develop the record in certain cases, it is Plaintiff's burden to produce evidence to establish disability.  20 C.F.R. § 404.1512(a).  The Court is unable to discern any inadequacy or ambiguity that did not allow for proper evaluation of the record as a whole.  *See Bayliss*, 427 F.3d at 1217.  Thus, the ALJ did not err by failing to further develop the record in this case.  Nonetheless, on remand, the ALJ should review all of the medical evidence and, if necessary, the ALJ may order additional consultative examinations and/or take additional testimony from medical experts.

explain how a conclusion was reached, "[a]nd that is so even if [the ALJ] can offer proper post hoc explanations for such unexplained conclusions," for "the Commissioner's decision must stand or fall with the reasons set forth in the ALJ's decision, as adopted by the Appeals Council." *Barbato v. Comm'r of Soc. Sec.,* 923 F.Supp. 1273, 1276 n. 2 (C.D.Cal. 1996) (citations omitted).  On remand, the ALJ must reconsider the medical opinion evidence, and provide legally sufficient reasons for evaluating these opinions, supported by substantial evidence.  If necessary, the ALJ should order additional consultative examinations and/or take additional testimony from psychological experts.  The ALJ may need to reconsider the credibility analysis, and the step two findings.  Finally, the ALJ should reassess Plaintiff's RFC and, if necessary, take additional testimony from a vocational expert which includes all of the limitations credited by the ALJ.

**ACCORDINGLY, IT IS HEREBY RECOMMENDED:**

> 1. Plaintiff's Motion for Summary Judgment, ECF No. 12, be **GRANTED**; and the matter remanded to the Commissioner for additional proceedings pursuant to sentence four 42 U.S.C. § 405(g).

> 2. Defendant's Motion for Summary Judgment, ECF No. 17, be **DENIED**.

**OBJECTIONS**

Any party may object to a magistrate judge's proposed findings, recommendations or report within **fourteen (14)** days following service with a copy thereof.  Such party shall file written objections with the Clerk of the Court and serve objections on all parties, specifically identifying the portions to which objection is being made, and the basis therefor.  Any response to the objection shall be filed within **fourteen (14)** days after receipt of the objection.  Attention is directed to FED. R. CIV. P. 6(d), which adds additional time after certain kinds of service.

A district judge will make a *de novo* determination of those portions to which objection is made and may accept, reject or modify the magistrate judge's determination.  The judge need not conduct a new hearing or hear arguments and may consider the magistrate judge's record and make an independent determination thereon.  The judge may, but is not required to, accept or consider additional evidence, or may recommit the matter to the magistrate judge with instructions.  *United States v. Howell*, 231 F.3d 615, 621 (9th Cir. 2000); 28 U.S.C. § 636(b)(1)(B) and (C), Fed. R. Civ. P. 72; LMR 4, Local Rules for the Eastern District of Washington.

A magistrate judge's recommendation cannot be appealed to a court of appeals; only the district judge's order or judgment can be appealed.

The District Court Executive is directed to enter this Report and

Recommendation, forward a copy to Plaintiff and counsel, and **SET A CASE**

**MANAGEMENT DEADLINE ACCORDINGLY.**

DATED January 10, 2017.

s/Mary K. Dimke

MARY K. DIMKE

UNITED STATES MAGISTRATE JUDGE